THE HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR23-5229-DGE |
| Plaintiff, | |
| v. | MR. REX'S SENTENCING MEMORANDUM |
| DYLAN REX, | |
| Defendant. | |

Dylan Rex is sincerely remorseful for his actions here. In his own words, "I am truly sorry for the harm my actions have caused in the lives of the victims and their families as well as the pain I have caused my family and friends. I understand how traumatic this matter has been for the victims and all who have been involved." Ex. A (Letter from Dylan Rex). Mr. Rex reflects often on how he harmed the Victims—the pain, fear, and stress he caused them. Indeed, the Victims who have made statements in this case have demonstrated strength, wisdom, and perseverance in the face of these harms. Since his release pretrial, nearly three years ago, Mr. Rex has worked hard to make amends where he can by seeking treatment to turn his life around. He also hopes to support others to prevent them from making the same terrible decisions he made. Nonetheless, he recognizes the immense harms he caused in committing these crimes. As such, Mr. Rex joins Probation and the Government in asking the Court to impose a 10-year custodial sentence. Mr. Rex asks for five years of supervised release to follow.

MR. REX'S SENTENCING MEMORANDUM
(*United States v. Rex* / CR23-5229-DGE) - 1

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

## I. FACTUAL BACKGROUND

Mr. Rex recognizes he is incredibly fortunate to have grown up in a supportive family and that much of his family has continued to support him, despite his actions here. Yet, like many other children who experience abuse, he feared sharing his own experience of abuse at eight years old with his family. He spent years hiding his confusion, sexual fixation, and shame stemming from this experience. As he grew older, he developed depression symptoms that he sought to sublimate with drug and alcohol use. When he overcame his substance use struggles, he still felt the low self-esteem, depression, and trauma emotions that had driven his substance use in the first place. These symptoms coincided with significant isolation during the COVID-19 pandemic lockdowns. Mr. Rex turned online to cope with his feelings and to seek validation. He took more and greater risks over time, until he committed these crimes.

Mr. Rex is truly sorry for those actions, and especially for the harm he caused to the Victims. He took full responsibility, and has spent the last few years doing his best to make amends by addressing his harmful behaviors head on. Mr. Rex finally opened up to his family about his emotional struggles. He sought and continued in mental health counseling. He participated regularly in a support group for sexual integrity, as well as the Pretrial Support Group. And he has worked with Pretrial Services to follow strict rules of supervision. These multiple protective factors, combined with Mr. Rex's sincere remorse and positive performance on supervision, indicate that he will be successful and is unlikely to recidivate following his sentence. *See* Ex. B (Evaluation by Dr. Megan Carter). Mr. Rex is now prepared to serve a lengthy prison sentence as just punishment for his crimes. He hopes in the future to continue the positive path he has started, and also to help encourage others dealing with pornography addictions or similar struggles to seek help before they harm others.

MR. REX'S SENTENCING MEMORANDUM
(*United States v. Rex* / CR23-5229-DGE) - 2

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

### A. Mr. Rex spent much of his teens and early adulthood unsuccessfully trying to overcome depression symptoms and to suppress his own experience of abuse.

Mr. Rex grew up in the greater Portland metropolitan area. In many ways, he viewed his upbringing as idyllic. He did well in school, played sports, and enjoyed outdoor activities with his family. While his family experienced some financial stress, that could lead to arguments between his parents, his parents persevered. Mr. Rex's family recognized his generosity, hard work, and compassion as his defining characteristics. Even as a child, he helped with chores and projects needed by his family. He also helped care for and provide company for his grandmother after she experienced complications from a stroke. And he provided this support for his family enthusiastically. *See* Exs. C–F (Letters from Family).

Unbeknownst to his family until more recently, Mr. Rex began dealing with his own struggles when he was eight years old. At that young age, he was exposed to pornography and abused by an older kid in his neighborhood. This was not a singular event, and the older kid told Mr. Rex to keep it secret. Mr. Rex obliged.

As time went by, Mr. Rex continued to hide this experience from his family. He tried not to think about it, but he had confusing emotions around this experience. Like many teenagers, he surreptitiously viewed pornography and started trying alcohol—both activities that pushed away these difficult feelings. When Mr. Rex went to college, he began drinking and using marijuana more heavily. Mr. Rex often feared rejection from peers or felt he was inadequate or under-achieving, but his substance use suppressed those feelings.

//
//
//
//

MR. REX'S SENTENCING MEMORANDUM
(*United States v. Rex* / CR23-5229-DGE) - 3

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

**B.     Mr. Rex cut off his substance dependence right before a period of unexpected isolation, exacerbating his depression symptoms at the same time he cut off his prior coping mechanism.**

Mr. Rex's family noticed him changing after he went to college. He was using substances heavily. He was no longer focused on school and positive goals. His grades slipped. His motivation ebbed. He disengaged from and doubted his religion. This decline progressed to a point that Mr. Rex's mother encouraged him to leave college and come home. He followed this advice.

Even after returning home, Mr. Rex still relied on substance use to cope with his prior abuse experience and growing depression symptoms. He had very low self-esteem during this time. The enthusiasm and generosity Mr. Rex's family observed while he was growing was fading into fear of rejection and hopelessness. But Mr. Rex's respect for his family remained a guiding force. In 2019, with his family's encouragement, Mr. Rex stopped using marijuana, significantly limited his alcohol use, and distanced himself from friends who used substances heavily.

Unfortunately, this initially positive change for Mr. Rex was quickly followed by the COVID-19 pandemic and attendant lockdowns. During this time, Mr. Rex became increasingly isolated. His family observed more and more depression symptoms. He was less engaged even at home with his family. His social world turned online.

**C.     Mr. Rex developed another addiction—seeking more extreme pornography and validation from users in related chatrooms—causing significant harm to many people.**

Mr. Rex increasingly sought comfort and validation online. While he once used alcohol and marijuana to feel he fit in and to quiet his feelings of worthlessness, he began to seek the same relief online. This included looking at pornography, engaging in chats where pornography was exchanged, and soon seeing more and more extreme content. Mr. Rex grew increasingly fixated on this activity—content that normalized his atypical early sexualization and abuse, and affirmation from other users. *See* Ex. B at

MR. REX'S SENTENCING MEMORANDUM
(*United States v. Rex* / CR23-5229-DGE) - 4

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

10–11. The more Mr. Rex depended on this online validation, the more he lost sight of the harm he was causing. Other users would praise him for hacking someone's account or discussing an extreme topic. *Id*. Ultimately, he hacked the private folders of many people, he viewed and possessed child pornography, and he sought child pornography from a user presenting as a mother creating the pornography with her child. Mr. Rex is horrified by his actions and profoundly remorseful.

Mr. Rex is deeply ashamed that he continued these actions despite the suffering they caused to the Victims. Indeed, as expressed by at least some of the Victims in their letters to the Court, Mr. Rex's actions caused pain, fear, and shame that Victims had to overcome. The child pornography-related offenses similarly caused significant trauma to the children involved, in both the abuse they survived and the ongoing distribution of depictions of that abuse. Mr. Rex is truly sorry for his actions and the harm he caused to so many people.

> **D.  Mr. Rex accepted responsibility and channeled his sincere remorse into dedication to treatment, to his faith, and to helping others to prevent similar crimes in the future.**

Mr. Rex has accepted responsibility for his criminal conduct here. He confessed the day he was arrested. And he has consistently worked with his defense counsel and the government to plead guilty to his crimes here. After opening up about both his actions and his struggles, Mr. Rex also sought and participated in treatment. He no longer pushes away the reality of the harms he caused. He sees them clearly and is more sorry than he can express.

Mr. Rex has not only taken responsibility with words, he has also done so with actions. Since his release nearly three years ago, he has worked diligently to turn his life around to ensure he never again makes such harmful decisions. Mr. Rex opened up with his family for the first time in his life about the abuse he experienced as a child, and the depression symptoms and feelings he was dealing with. He began mental health

MR. REX'S SENTENCING MEMORANDUM
(*United States v. Rex* / CR23-5229-DGE) - 5

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

1  treatment, and has remained engaged in this treatment steadily, learning healthy coping
2  mechanisms to manage his depression and anxiety symptoms. *See* Ex. G (Letter from
3  Counselor Michael Fernandez). Mr. Rex also engaged in support groups. He has
4  regularly attended the Pretrial Support Group and also attended Celebrate Recovery—a
5  church-based support group for sexual integrity—at the suggestion of his counselor.

6      Mr. Rex has also rededicated himself to his faith. Religion has been a pillar for
7  Mr. Rex's family, but during his early adulthood, prior to this arrest, Mr. Rex doubted
8  his religion and had ceased any religious practice. But Mr. Rex committed to his faith
9  after his arrest in this case. He has participated in an intensive bible study with his
10 family. In this bible study, he finds not only guidance and grounding, but also joy. He
11 attended church services with his family and devoutly prayed and participated. And he
12 found a positive faith-based support group specifically focused on sexual integrity. Mr.
13 Rex's religious practice is a central part of his positive transformation—it empowers
14 him to cope in a healthy way with difficult emotions, provides clear moral structure to
15 ground his decisions, and has helped him find positive and supportive community.

16     Mr. Rex is now preparing to serve a lengthy prison sentence. He knows this
17 sentence will be difficult, and he hopes to continue his bible study during this time. He
18 also hopes to participate in the Bureau of Prisons (BOP)'s Sex Offender Management
19 Program (SOMP) while in custody so he may engage in treatment specifically to
20 address his conduct here. After his release, he hopes to continue treatment, to resume
21 working in construction inspection, and to work to create better supports for people
22 dealing with pornography addiction or similar issues to address them before they make
23 the terrible decisions that Mr. Rex made here. He knows he can never undo the harm he
24 caused to the Victims, but he hopes he can make amends by doing whatever he can to
25 prevent similar harms in the future.
26

MR. REX'S SENTENCING MEMORANDUM
(*United States v. Rex* / CR23-5229-DGE) - 6

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

## II. ARGUMENT

Mr. Rex joins Probation and the Government in recommending the Court sentence him to 10 years in prison. He asks the Court to include a recommended designation to FCI Englewood, as well as a recommendation that he be enrolled in the SOMP. Englewood is one of the handful of facilities that offer the SOMP and is the most convenient for his family to visit him. Mr. Rex also respectfully asks the Court to allow him to self-surrender. Self-surrender is suggested by Pretrial Services given his positive performance on pretrial release. This would likely benefit all parties, as the local FDC SeaTac is significantly understaffed, creating problems for employees and concerning dangers for people detained there.[1]

The driving factor behind Mr. Rex's recommended custodial sentence, and the agreement struck in this case, is the first statutory sentencing factor: The need for the sentence to "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). As Mr. Rex recognizes, his actions caused significant harm to multiple Victims, many of them minors who were especially vulnerable. This harm is serious, and a serious punishment is appropriate. Ten years in prison is just such a serious punishment. While, as discussed above, Mr. Rex hopes to participate in meaningful treatment during that time, his prison sentence will undoubtedly be isolating, difficult, and frightening. His conviction of sex offenses here and relative youth will likely make him vulnerable to

---

[1] The OIG recently confirmed that the FDC SeaTac is dangerously understaffed. *See* Dep't of J., Office of the Inspector General, Inspection of the Federal Bureau of Prisons' Federal Detention Center SeaTac, 25-081, Sept, 2025, https://oig.justice.gov/sites/default/files/reports/25-081.pdf (noting, among other issues, that 10 of 20 existing health care positions were filled while the facility was projected to require 40 health care positions, and that 62 percent of the most serious medical requests—including for respiratory distress and severe pain—were never addressed by a health care provider).

MR. REX'S SENTENCING MEMORANDUM
(*United States v. Rex* / CR23-5229-DGE) - 7

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

threats or extortion while in custody. Mr. Rex hopes he can maintain hope and purpose through his faith during this expected difficult time.

The other statutory goals of sentencing are best advanced by supervision in the community. Mr. Rex's demonstrated success in mental health counseling and on supervision over the past nearly three years indicate that such community-based interventions are sufficient to deter him from criminal conduct, to protect the community, and to rehabilitate him. *See* 18 U.S.C. § 3553(a)(2)(B)–(C). If restitution is requested, it will also better enable him to pay that restitution quickly. *See id.* at § 3553(a)(7).

As experienced psychologist Dr. Megan Carter opined after evaluating Mr. Rex and reviewing records in this case and the related Clark County case:

> Given Mr. Rex's positive functioning since he was arrested and released on presentence supervision, and his many protective factors (e.g., supportive family, ability to engage in gainful employment, intelligence, amenability to treatment, willingness to engage in services), he would benefit from continued community-based services where he can continue to address the issues that resulted in his current legal case(s) and allow him to continue to remain connected to his positive supports such as his family, his mental health counselor and his faith-based community. . . . His adherence to supervision conditions and engagement in community-based services without problems is evidence of his amenability to long-term supervision conditions that are adequate for protecting the community while still addressing his problematic behavior in the past.

Ex. B at 13. She recommends continued mental health treatment that continues to address his general mental health concerns (depression and anxiety symptoms, low self-esteem) and addresses the conduct underlying his convictions here. *Id*.

To achieve these ends, Mr. Rex asks the Court to follow his prison sentence with five years of supervised release. He joins in recommending the conditions

MR. REX'S SENTENCING MEMORANDUM
(*United States v. Rex* / CR23-5229-DGE) - 8

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

recommended by Probation, but requests modifications to a few of those conditions.[2] On supervised release, Mr. Rex will continue to abide by strict restrictions on where he can live or work, and restrictions on contact with minors. He will continue to have limited ability to use the internet and his internet use will be monitored. He will also register as a Sex Offender and update his registration as required. Most importantly, he will continue in mental health treatment and faith-based supports, and he will additionally participate in sexual deviancy treatment.

These conditions of supervision and forms of community-based treatment and support are more than sufficient to achieve the remaining goals of sentencing. Furthermore, given Mr. Rex's positive performance on supervision over the past nearly three years, a five-year term of supervision is sufficient to further the goals of deterrence, safety, and rehabilitation. Mr. Rex's registration requirement will last for

---

[2] Specifically, Mr. Rex proposes that Special Condition Number 1 be eliminated in favor of the earlier standard condition for early drug and alcohol testing upon release. Mr. Rex has maintained sobriety, confirmed through urinalysis (UA), for nearly three years while on pretrial release; up to eight UAs per month is no longer necessary. Mr. Rex asks that the two computer monitoring conditions contained at Special Condition Numbers 6 and 7 be combined into a single, consistent condition to avoid confusion. Mr. Rex asks that Special Condition Number 9 be eliminated or tailored only to the conditions for which polygraph testing is reasonably related to the goals of supervised release. The computer monitoring condition already contains a polygraph condition to ensure compliance. Similarly, the sexual deviancy assessment condition already provides for a polygraph examination to form part of that assessment, and to inform later treatment. *See* Special Condition 12 (there referred to as "physiological testing"). Supervised release conditions must be reasonably related to advancing the goals of supervised release. *See* 18 U.S.C. § 3583(d); *United States v. Rearden*, 349 F.3d 608, 618 (9th Cir.2003). While polygraph testing may be a reasonable part of a sexual deviancy assessment, or even part of sexual deviancy treatment, and of confirming compliance with computer monitoring, a condition giving broad discretion to a supervising officer to seek polygraph examinations to confirm compliance with any condition of supervised release is not reasonably related to the goals of Supervised Release. Mr. Rex has been honest with his pretrial services officers throughout his pretrial supervision. Polygraph examinations are expensive and burdensome, and should be limited to situations where they actually advance the goals of supervision.

MR. REX'S SENTENCING MEMORANDUM
(*United States v. Rex* / CR23-5229-DGE) - 9

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

1  years to come after that, but active supervision is unlikely to be necessary for more than
2  five years. In the highly unlikely event that Mr. Rex has violations while on
3  supervision, the Court would be able to extend the length of supervision at that time.

### III. CONCLUSION

Mr. Rex is truly sorry for his conduct here, and for the immense harm he caused to the Victims, their families, and his own family and friends. He has made important changes in his life and learned to successfully manage his mental health in a way that uplifts others, rather than harms others. Mr. Rex is prepared to accept substantial punishment for his actions and is resolved to continue on his positive path after prison. He asks this Court to sentence him to 10 years in prison followed by five years of supervised release.

DATED this 30th day of January, 2026.

Respectfully submitted,

*s/ Rebecca Fish*
Assistant Federal Public Defender
Attorney for Dylan Rex

MR. REX'S SENTENCING MEMORANDUM
(*United States v. Rex* / CR23-5229-DGE) - 10

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710