The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DYLAN REX,<br><br>Defendant. | NO. CR23-5229DGE<br><br>UNITED STATES' SENTENCING MEMORANDUM |

## I.   INTRODUCTION

Dylan Rex impersonated a Snapchat support member to gain unauthorized access to over 170 victims' Snapchat accounts across the country and steal photographs, which were used by others to harass, intimidate, and embarrass the victims online. At the same time, Rex consumed large volumes of child pornography and engaged in discussions in online forums regarding child pornography with other individuals with very similar tastes. This was Rex's full-time job for the better part of three years, between July 2020, and March of 2023. When it came to his online activity, nothing was off limits to Rex. Rex has pleaded guilty to seven counts of Wire Fraud pursuant to Title 18 U.S.C. §1343; seven counts of Computer Fraud pursuant to Title 18, U.S.C. §1030(c)(2)(B)(i); one count of Possession of Child Pornography pursuant to 18 U.S.C. §2252(a)(4)(B), 18

United States' Sentencing Memorandum - 1
United States v. Rex, CR23-5229DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

1  U.S.C. §2252(b)(2); and one count of Attempted Enticement of a Minor pursuant to 18
2  U.S.C. §2427 and now awaits sentencing. Given the seriousness of his crimes and the
3  duration and reach of his predatory behavior, the Court should sentence Rex to 120
4  months in prison, plus a 15-year term of supervised release. This reasonable sentence
5  suffices but is no greater than necessary to achieve the statutory sentencing goals. The
6  government also requests a separate restitution hearing be set approximately 60 days
7  from the sentencing hearing.

## II.   BACKGROUND

9   Between July 2020 and March 2023, Rex devised a scheme to defraud over 170
10 victims of private and intimate photographs/videos stored in their Snapchat accounts.
11 PSR ¶ 11, 15. Victims 1-8 are just a small fraction of those victimized by Rex's actions.
12 In carrying out this scheme, Rex would create a false phone number using TextNow (an
13 internet service provider of voice over internet protocol telephone numbers), to
14 communicate with victims. Rex also created a false username,
15 snapchatservices01@yahoo.com, with the intention of deceiving victims into believing he
16 was a member of the Snapchat support team.  Using the false number and email address,
17 Rex would send a text message to the victim stating he was a member of the Snapchat
18 support team and that Snapchat had detected "suspicious login activity" on their account.
19 Rex would then request the victim to send him their six-digit pin to secure the account.
20 Meanwhile, at the same time, Rex would initiate a password reset using the victim's
21 username, which triggered Snapchat to send a six-digit pin to the victim. The victim,
22 believing Rex was indeed a member of the Snapchat support team, would then send him
23 the six-digit pin. Once Rex received this pin from the victim, he would use it to login into
24 the victim account, change the password, and lock the victim out. Rex would then
25 proceed to steal photographs and/or videos of the victim, some of which were intimate
26 and very personal in nature. PSR ¶ 14. Many of these photos and/or videos were
27

United States' Sentencing Memorandum - 2
*United States v. Rex*, CR23-5229DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

circulated on the internet, some of which were used by others to either harass or extort the victims.

On March 29, 2023, after law enforcement followed Rex's digital trail based on evidence discovered while investigating his Snapchat phishing scheme, agents conducted a search of his residence. During that search, agents seized several digital devices from his home including, but not limited to, his cell phone. On that phone, agents discovered child sexual abuse material (CSAM). In all, Rex was in possession of over 600 images of CSAM (approximately 350 image files and 1,000 video files) over eight separate devices. Some of the material involved a minor under the age of 12 and a toddler or infant. PSR ¶ 21. Agents also discovered communications where Rex was engaged in the distribution of CSAM over the internet. Rex sent approximately 20 images and/or videos of CSAM to other users between December 2021 and March 2023 using social media platforms Snapchat and Kik. PSR ¶ 21-23.

Communications with a mother of a child under 10 years old was also discovered on Rex's phone. In those conversations, Rex repeatedly offered to pay the child's mother to sexually abuse the minor child, film the abuse, and send him the imagery. In one exchange, Rex wrote that he would like to see the minor victim and the mother engage in mutual oral-genital sexual intercourse. There is record of Rex sending at least $150 to the minor victim's mother. There is also record of the mother providing Rex with videos of herself sexually exploiting the minor victim. PSR ¶ 23.

**A.   Procedural History**

On March 29, 2023, the United States filed a complaint charging Rex with one count of Possession of Child Pornography (18 U.S.C. 2252(a)(4)(B),(b)(2). Dkt. 1.

On July 26, 2023, after a waiver of speedy indictment, a federal grand jury indicted Rex on one count of Possession of Child Pornography (18 U.S.C. 2252(a)(4)(B),(b)(2). Dkt. 30.

United States' Sentencing Memorandum - 3
United States v. Rex, CR23-5229DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

On August 26, 2025, Rex entered a plea of guilty to seven counts of Wire Fraud; seven counts of Computer Fraud; one count of Possession of Child Pornography; and one count of Attempted Enticement of a Minor. Dkt. 65. In the plea agreement, the United States and Rex agreed to recommend that the appropriate term of imprisonment to be imposed by the Court at the time of sentencing is a term of 120 months. Dkt. 65 at ¶ 12.

### III.   UNITED STATES' SENTENCING RECOMMENDATION

**A.   Guidelines Calculation**

The United States agrees with Probation that Rex is a Criminal History Category II. PSR ¶ 65. Under the plea agreement, the parties agreed that Rex's Base Offense Level is 38 after the grouping of offenses. Dkt. 65 ¶ 10. Probation calculated the same. PSR ¶ 58.

Thus, using the Base Offense Level from the plea agreement, and with a 3-level reduction for acceptance of responsibility, Rex's total offense level is 35, for an advisory Guidelines range of 188 months to 235 months in prison. There is a 120-month mandatory minimum that applies to count 16.

**C.   Joint Sentencing Recommendation**

As mentioned above, both the United States and Rex agreed to recommend a 120-month sentence. Now, probation makes the same recommendation. The parties believe that a 120-month sentence is sufficient but not more than necessary to accomplish the goals of sentencing.

**D.   Factors Related to the Parties' Sentencing Recommendation**

The Court considers not only the advisory sentencing range calculated under the United States Sentencing Guidelines, but also the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate

United States' Sentencing Memorandum - 4
*United States v. Rex*, CR23-5229DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records

All the 18 U.S.C. § 3553(a) factors support the parties' 168-month recommendation.

### 1. Nature and Circumstances, and Seriousness of the Offense

Rex committed very serious crimes that spanned over the course of several years. Rex's sole purpose of hacking into the victims' Snapchat accounts was to hunt for intimate and sexually suggestive photographs and/or videos of young women that he would in turn share or trade on the internet. Although Rex may not have participated directly in the harassment and intimidation of these victims using their stolen imagery, he undoubtedly contributed to it. His actions created a living nightmare for many of these victims. For instance, in a letter submitted to the court by Victim 6, she talks about how this experience impacts her today, "I always think this incident and violation didn't affect me but then strange freakouts happen where I start screaming and crying…" Although I am sympathetic to Rex's unresolved childhood trauma, I cannot ignore the emotional, mental, and physical trauma he imposed on the victims in this case. This experience will follow them for the rest of their lives, and it will impact their own relationships with others for years to come.

Additionally, Rex was in possession of a voluminous amount of CSAM material, some of which depicted children as young as 12 years old and even some infants. Although he did not produce this material himself, his participation in possessing, distributing it, and soliciting others like the mother of the minor victim mentioned above perpetuates a market that exploits these children and victimizes them every time someone

United States' Sentencing Memorandum - 5
*United States v. Rex*, CR23-5229DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

clicks on their image. This type of conduct harms everyone involved such as the victims and their families as these images tend to remain in the darkest corners of internet for years.

A 120-month prison sentence should impress upon Rex the serious nature of his actions and the impact it has on all involved.

### 2. Rex's History and Characteristics

Rex, 32, has very minimal criminal history. The sole conviction on his record was based on a video discovered during this investigation on one of his digital devices. On October 16, 2025, Rex was sentenced to 90 days in custody after having plead guilty to two counts of Voyeurism in Clark County Superior Court. In that case, Rex photographed and filmed victims, including minors, without their knowledge or consent at his parents' house. Rex used a recording device that he placed in the bathroom to capture these images. PSR ¶ 64. Other than this conviction, Rex has no other criminal history. Given his history and experience growing up as reflected in the PSR, Rex has an ACEs score of 0. PSR ¶ 94. The charges are serious, and the penalties are steep as reflected by the maximum penalties and the sentencing guideline calculations. A 120-month sentence, with 15 years of supervised release, balances these factors against the aggravating factors in the case.

### 3. Need to Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence

The recommended sentence also promotes respect for the law, provides just punishment for the offense, and affords adequate deterrence. It is the government's hope that a 120-month sentence followed by 15 years of supervised release will deter Rex from committing further crimes in the future. Additionally, the recommended sentence will impress upon others that offenses of this nature will not be tolerated.

United States' Sentencing Memorandum - 6
*United States v. Rex*, CR23-5229DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

### 4. Need to Protect the Public from Rex's Further Crimes

For years, Rex made a living online preying upon the victims and perpetuating a market that makes a living on trading CSAM material. The victims in this case will have to live with their trauma for the rest of their lives and the impacts are real as evidenced by the letters submitted to the Court. Rex cannot be in a place or position where he can commit these crimes again. The need to protect the public from him could not be clearer. Without a significant prison sentence and significant term of supervised release, Rex could return to committing similar crimes once he completes his sentence. A 120-month sentence is sufficient but not greater than necessary to protect the public.

## IV. CONCLUSION

For the reasons set forth above, the government recommends a custodial sentence of 120 months. The government recommends that Rex's custodial sentence be followed by a 15-year term of supervised release. Finally, the government requests a restitution hearing be set for 60 days from the date of sentencing. This sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing.

DATED this 30th day of January 2026.

Respectfully submitted,

CHARLES NEIL FLOYD
United States Attorney

*/s/Elyne Vaught*
ELYNE M. VAUGHT
Assistant United States Attorney
United States Attorney's Office
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
Telephone: (253) 428-3830
Email: Elyne.Vaught@usdoj.gov

United States' Sentencing Memorandum - 7
United States v. Rex, CR23-5229DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800